We'll call our last case of the day, number 16-22, the last case this morning supposedly, and now we're into the afternoon, almost afternoon, 16-2242, Houser v. Superintendent et al., Superintendent Folino et al., and is it Mr. Khara? Yes, sir. And Mr. Hadsall and Mr. Kirkpatrick. Yes, sir. And we're happy to have you. Thank you for your letter, but you're welcome here. Come on up. Come on up. Thank you for your service, and thank you also for aiding her in that, and it's much, much appreciated by the court.  Okay. How much? Oh, you reserved three minutes? That's right. You got it all. Your Honors, and may it please the court, my name is Teresa Khara, and I'll be arguing for Appellant Darien Houser. This is a case about judicial process and about confirming the relevance of Tavron v. Grace to any request of appointment for counsel. So your position is that at any time a request is made, the Tavron factors have to be applied? So, for instance, on the – this is the second successive request – on the second, on the third, the court is obligated to go back to Tavron, and then if Tavron is satisfied, appoint counsel? That is correct, Your Honors. Tavron should be applied in each request of appointment for counsel because it sort of provides a critical mass to be considered within the context of other factors, and that is up to the district court's discretion. So here it is not our position that the district court erred in considering factors like judicial resources and efficiency, but it is our position that the district court erred in considering those factors exclusive of Tavron. Nowhere in the record can this court look to the district court's analysis of the Tavron factors as they pertain to this case. But isn't it based – this is just a discretionary – we're reviewing for abuse of discretion, right? And the court has broad discretion. I guess we need to nail down what the nature of the Tavron factors are. I mean, they do provide guideposts, but is it always error if the court fails to consider one or more of them, of the factors? Yes, Your Honor. If there is no consideration of any of the Tavron factors, then that is an abuse of discretion. It is a permissive standard, but it is not a meaningless one. The Supreme Court has said that discretion is not left to inclination but to judgment, and judgment is to be guided by sound legal principles. The legal principle or guidepost, as you said here, was the Tavron test. This court has described Tavron as a list of criteria to guide the district court in evaluating these decisions. Well, let's think about that. First of all, the court had a difficult time finding someone to take the case. Then they took – Reid Smith took on the case. There is some conflict. That may be the best way to put it. But before the point of conflict, if I understood the facts correctly, Reid Smith billed 1,300 hours. Now, I was an associate a long time ago, but 1,300 hours is all my time for six months. I worked hard. I was in New York. Or more than that, more than six months in, let's say, a different market. Full time. Weekends. Now, I am not familiar with all of the intricacies of this case the way you are and your client is. I only read what's in front of me. But if I had an associate at a large, well-known and prestigious firm give me all of their time for six months, what else could there possibly be to do? So that when my point builds up to this point, when the court says that all of the discovery is done, everything is ready, you obviously are familiar with the case. You've been on the case, so to speak, for four years. Why is it error? Why should we find that there is error here when clearly your client is in a much superior position? Your client has received the benefits of counsel, and the court has made a determination about husbanding its resources. Your Honor, this court should find error for the same reason that the Tebron court found error there. That case presented very much a similar situation where the district court failed to properly analyze its decision to deny an indigent litigant's request for counsel. There, the Tebron court stated that the court of appeals may have to remand in cases like that for without the district court's reasons. The court of appeals may not be able to determine whether the district court analyzed the decision properly, and that is exactly what we have here. Because there is nothing in the record to demonstrate the district court applying Tebron, this court is left to wonder whether the district court applied Tebron to this case, and if the district court did, whether that application was proper. Can we just look at the factors? The ability to present his or her own case. Now, I've just gone over that. I'm not going to repeat it, but that's one of the Tebron factors that was clearly addressed. The difficulty of the particular issues, the court said, you know, this is basically going to be the credibility of witnesses. I could be wrong about that, but, you know, basically there were not that many witnesses. I understand there would be some medical testimony, but he said he was, you know, intimately familiar with it. So if it's a permissive standard, and those are two of six factors, how do we on an abuse of discretion, as my colleague mentioned a few moments ago, say that there's error here that requires it to go back? Well, a couple of points on that, Your Honor. The first is that with respect to ability, this court has stated that the ability to file and respond to motions does not conclusively establish ability. And presumptively, upon Mr. Hauser's first request for appointment of counsel, the magistrate judge who granted that request must have found that Mr. Hauser was unable to take the case as it presented itself at that moment. But now, that's at a point of time, which gets me back to your notion about successive appointments. At that point in time, let's say I, for the purpose of discussion, I agree with you. Then you have 1,300 hours of lawyer time. Over 10 months. He's not, your client's not in the same position over 10 months that he was previously. That's certainly true, Your Honor, and it is also true that he was given factual discovery. But to go back to Parham, this court noted there that there's a difference between the facial complexity of an issue and the difficulty of presenting that issue to a jury in an adversarial setting. Similarly, there's a difference between possessing that factual discovery, which Mr. Hauser had, he had thousands of pages to sort through. And there's a difference between possessing those pages and being able to sort through them and understand how to present and prepare those documents for trial. And so, with respect to the ability issue, it's our position that Mr. Hauser did not have the ability to meaningfully respond at trial to these adversarial tactics for those trained in presentation. And with respect to the legal issues of this case, this court has consistently found that deliberate medical indifference claims satisfy the complexity requirement as articulated in Trabron. This court did that in Montgomery, and this court did that in Parham v. Johnson. I don't have any problem saying that the Trabron factors apply to a successive request for counsel. But essentially, to me, it comes down to three things you look at. Is there merit to the claim? And this survived summary judgment, so there's got to be some merit to it. Is the person indigent? That's the fourth factor, in effect. And then, is the person reasonably able to represent himself? And for four years prior to the appointment of Reed Smith, including surviving summary judgment, it looks like this person really knew his way around. So how can we say it's an abuse of discretion when apparently there was great difficulty despite – this isn't a case of counsel not being there, running away, doing other things. This is a case of probably somebody in a law firm, an associate in a law firm, spending countless hours trying to do the case, and there was an irreconcilable breakdown. What is the court to do? Well, two points on that, Your Honor. The first is that the abuse of discretion issue is distinct from the outcome that the Trabron factors demonstrate. So there is a distinction between requiring the application of Trabron to every case and dictating what that application will result in for a particular case. So the distinction I'm trying to make here is that with respect to the abuse of discretion, we are discussing the district court's failure to apply the relevant test to this case. That was the abuse of discretion. What did the judge miss in terms of the factors that should have been taken into account? The judge should have discussed the resources that were available to Mr. Hauser. For instance, on the credibility and expert witness point, which is often discussed in relation with one another in these analyses, Mr. Hauser was unable to investigate the credibility of his expert, which resulted in his expert witness's impeachment during trial, which severely damaged the credibility of his case. Mr. Hauser, as a prisoner, does not have access to the Internet. He was not able to investigate his expert's credentials, his expert's education. Furthermore— Are you suggesting that his expert came to his notice on his own account and not with Reed Smith? No, Your Honor. I thought Reed Smith found the expert, right? Exactly. So, I mean, we're out of an IAC context, but that seems to be the complaint. They blew it. Should have got a better expert or something. Well, or maybe no one else would take the case. Or right. No one else would take it. I mean, that was a real tough time finding Reed Smith to begin with, wasn't there? No, he met the expert. I met the expert. And also the expert. Well, with respect to that, Your Honor, it's our position that had Reed Smith been preparing for trial, they would have met with Mr. Hauser's expert, and they would have discussed these issues with him. And either they would have coached his expert to properly respond to or bring them up himself, and that would have helped with the credibility issue. But as things stood for Mr. Hauser, Mr. Hauser was blindsided by this and unable to rehabilitate his expert after impeachment had occurred. And so it is issues like this, along with the fact that Mr. Hauser tried to introduce learned treatises into the record and was unable to do so, and introduced medication labels into the record but was unable to do so. So you're the judge in this case, and they come to you at Reed Smith. What would you have done if you were in Judge Ambrose's position at the time that Reed Smith says, we have hit the end of the road? Well, Your Honor, the issue of... I'm not talking about new counsel, but would you have let him out of the case, or would you have forced him to continue? Your Honor, that's entirely within the discretion of the court. And in any case, it's not really an issue on this appeal. We're not contesting the appropriateness of the court allowing Mr. Hauser to... So if that's entirely within the discretion of the court, why isn't the decision not to appoint new counsel entirely within the discretion of the court? It is, isn't it? It absolutely is, Your Honor. But when Mr. Hauser filed his second motion requesting appointment of counsel, the district court should have applied the Tebron factors in an evaluation of its decision to deny. In this case, the district court did not, and in each subsequent attempt, or opportunity rather, to explain its decision to deny, it relied exclusively on factors outside the scope of Tebron. The most substantive of these responses was contained within the order denying Mr. Hauser's motion for a new trial. There, the district court focused on the withdrawal of counsel, judicial resource concerns, and the judge's view that Mr. Hauser had performed competently at trial. And it is not our position that these factors are irrelevant, but rather that they should have not... they needed to be informed. So are you telling us that if we go in your favor that we should reverse every time a trial court doesn't go through each and every Tebron factor? Your Honor, abuse of discretion is a permissive standard. In this case, there is no evidence that the district court considered the Tebron factors, and in fact only considered... I mean, Judge Greenway started going through a couple of them that were very important. It looks like this person had the ability to represent himself. He had done so. He had proven that. There was great difficulty getting counsel the first time. Gets counsel, counsel spends a lot of time on the matter, and you hit an irreconcilable conflict. Assume the person is indigent, but nonetheless is able to represent himself. How can we say this is an abuse of discretion for the court to say, I can't go any further? Your Honor, I see my time is up. Go ahead. You can finish. Your Honor, the abuse of discretion is the failure to apply the standard. The factors of credibility and the expert witness factor were not really discussed by the court. And here, this was a swearing contest. This was a battle of experts. And the failure to apply Tebron is the abuse of discretion. Thank you, Your Honor. Thank you. We'll get you back on the panel. Thank you very much. Mr. Hassel. Good morning, Your Honor. My name is John Hassel. I represent Dr. Jin. The Department of Corrections is going to take seven minutes of the time. Okay, so I'm just going to be taking eight to begin with. Mr. Kirkpatrick's representing? Dr. Jin only. Oh, you're representing Jin. Is he representing? Superintendent. Superintendent Filino, right? Okay. My basic argument is that Tebron really doesn't apply to this particular circumstance, this particular case. Why does it not apply? Because we are beyond Tebron. This is a case where the… Why are we beyond Tebron? Because an attorney was already appointed, and the circumstances that resulted in the attorney withdrawing was the conduct of the prisoner. And basically what the prisoner effectively did was discharge the appointed counsel. And therefore the discretion of the court wasn't whether… the discretion of the court is addressing what the situation that the prisoner created when he effectively discharged counsel. But wait a minute. You're talking about the appointment of counsel. The only difference here from the appointment of Reed Smith is it's after the previously appointed counsel has been allowed to withdraw. Why should Tebron not apply to the motion this time for counsel? Well, Tebron basically stood for the proposition that the court has to exercise discretion and express the rationale for its decision about whether or not to appoint counsel. Tebron really… the magistrate judge in Tebron just simply applied the wrong standard. So the case was sent back to the magistrate judge to determine whether or not an attorney should be appointed. That's what Tebron stands for. I mean, I haven't found any relevant Third Circuit presidential case, but we do have an NPO in 2007, Gordon V. Gonzalez, which evaluated a successive motion for appointment under Tebron. It concluded it was not an abuse of discretion in that case. And I am familiar with an Eighth Circuit case that is presidential, Reyes, R-A-Y-E-S, V. Johnson, 969 F. Second, 700, that adopted factors in a case called Macklin, also from the Seventh Circuit, involving a successive motion after plaintiffs first appointed counsel have withdrawn. Why don't we just follow what the Eighth Circuit has done and not create a circuit split? You don't have to create a circuit split because what you're basically evaluating in this particular instance is the conduct, the discretion of Judge Ambrose in this case. And in this case, there was a hearing about this withdrawal of counsel motion. Judge Ambrose gave the prisoner multiple opportunities to determine whether or not to keep counsel. The judge even said, you want a week to think about this? You can have a week to think about it. Let's change the facts a little bit, okay? It's just an honest, I can't work with this person anymore, right? There's no antipathy, there's no rancor, and the client comes to the court and says, I just need somebody else. And the lawyer agrees and says on the record, you know, nice fella, it's just not working, okay? So the question is, in that circumstance, should our rule essentially be, that would be a successive appointment, you agree with that, right? So should our rule be that the Tebron factors need to be applied there? No, I think that what you would be looking at is what was the rationale for allowing counsel to withdraw? I don't think in this case there was antipathy or rancor between basically what you had here was the prisoner saying, look, I don't want these attorneys to dismantle my case. I know my case inside and out. I know what I have to prove. I know what my damages are. I know what my injuries are. And I'm the best person to tell them how to do it. And if they don't want to do it the way I tell them to do it, then that's the problem. I want them to try the case the way I want them to try it. And I don't think that there was like rancor or there was, it was just the individual prisoner saying, I know how to do this the best. Let me ask my question a different way. Are there any circumstances in which you would agree that if a circumstance arose calling for a request for successive counsel to branch to be applied? Perhaps if there was a situation where the defense counsel appointed defense counsel fell ill and was not able to perform the functions as an attorney, then maybe you would have to look at it a little more closely. But I think that that's really where I would draw the line. So rather than argue that Tebron factors don't apply to a successive motion, wouldn't it be better to say even if they do apply, I win? Yes. And even if they do apply, in this case, Judge Ambrose exhibited a lot of patience and made extraordinary efforts to try to persuade the prisoner to accept counsel. If you apply Tebron, how would you apply it to this case to show that this was not an abuse of discretion? What would you say to that? Because by the judge's colloquy with the prisoner outside the presence of defense counsel, where she repeatedly asked him, are you sure you want to go on your own? You're risking having to try this case by yourself. And she said, like I said, do you want another week? Do you want to think about it? She tried to give him every opportunity to accept Reed Smith, three attorneys who have worked up this case to represent him. And he just said, well, he didn't want Reed Smith. Huh? He didn't want Reed Smith. No, I think he didn't want them to present the case the way it needed to be presented in a professionally responsible manner. Well, now, we all know that on the third try they found Reed Smith, and Reed Smith did a ton of work. Shouldn't the district judge have at least given another shot to finding an attorney at this point? I mean, Reed Smith did all the hard work. Couldn't a big firm throw an associate, say here's a trial for you or something? Wouldn't it be a heck of a lot easier on that fourth try? There are cases cited where they made 12 tries, spent hundreds of hours, the district court did three tries here. I mean, they got somebody on the third try. Actually, Your Honor, getting attorneys to actually look at the file and then go through three attorneys. Two attorneys previously looked at the file and said, no, I don't want it. He was lucky enough to get Reed Smith, who put all their resources in it. I don't think it's practical to assume that somebody else is going to come in with that history that they will know about. Well, we wouldn't have to do much more work probably, but shouldn't the district judge have at least given it another shot? Not with the way Mr. Houser expressed himself, because he said, I know what my case is about, and I don't want the attorney to dismantle my case. I want to have the attorney to present this case the way I want to. Obviously, he was being reported on. But it really came down to the expert witness, and the expert witness was decidedly unhelpful here, by the way. I think you hit the nail on the head, Your Honor, when you said, I mean, unfortunately, these pro se prisoner cases, getting attorneys, getting expert witness, funding that, it's a much bigger issue than this particular case. May we hear from Mr. Karpatrick? May it please the court. My name is Sean Karpatrick with the Pennsylvania Office of Attorney General, and I represent Superintendent Louis Foligno. Before we get into the issue that obviously sort of the A-plot of this case, which is the Tavron factors, I want to briefly discuss the fact that Superintendent Foligno shouldn't have gone to trial in the first place. Yeah, but the point is, Mr. Houser survived the motion for summary judgment. And that was an error, Your Honor. That may be error, but it shows there's some merit. So, and this case really came up to us on Tavron, so I don't know if I can... I would respectfully disagree, Your Honor. Did you cross appeal? No, Your Honor. And in re Christopher Columbus LLC makes clear that as the appellees, we do not need to file a cross appeal if we raise an argument supported by the record that is in defense of the judgment as entered. That's exactly what we're doing here. And the danger in holding otherwise is that it would require us to defensively file cross appeals in cases where we won. The reason the summary judgment order was never appealable for us is because we wanted a jury verdict. So the argument that this issue is not properly before the court, I would strenuously disagree with, Your Honor. What is the forum to litigate the merits of the case against Superintendent Felino? I mean, you litigated it in the trial court, right? And you won. Yes, Your Honor. The issue, however, is irregardless of whether... Or regardless. Oh, did I say irregardless? Yeah. Okay, wow. Yes, regardless. I apologize. Regardless of... I think I wanted to say irrespective. Regardless of whether Mr. Hauser had an attorney or not at trial, we shouldn't have been there to begin with. We should have received judgment as a matter of law at summary judgment, and if not at summary judgment when we filed our Rule 50A motion at the close of his case in chief, and certainly when we filed it again at the close of our case in chief. So this is an argument we raised below and is a separate and independent basis to uphold what is actually being appealed, which is the judgment. And this case falls squarely within Spruill v. Gillis. This is a non-medical superintendent, the only claims against which are that he, in reviewing the grievances, did not override the medical judgment of medical staff. And I would note that by the time it got to him, it had already been appealed once to the Bureau of Healthcare Services, in which an independent medical expert already looked at this. So again, it's, I believe, very important that the In Re Christopher Columbus LLC, holding that as an appellee we do not need to file cross appeals every time we win, out of a fear that should this go up on a different issue, we've waived any kind of argument, is sustained. Going to Tavron. We actually have no issue with the holding that the Tavron factors apply with subsequent appointments of counsel. But as Tavron itself makes clear, they are not an exhaustive list. And we actually cited Gordon, which is a non-presidential opinion, but I think is very helpful because that case, the panel looked at two other factors. And one of those factors was the district court's willingness to assist the pro se litigant. But the other factor is the dearth of available counsel in the pro bono pool. And our concern in this case is not that, our main concern in this case, quite frankly, is an institutional case. My office litigates a very large number of civil rights trials. And it is important to us that we have a robust pro bono program. And if you take the discretion away from the district court and say, well, you must appoint counsel, once you find Tavron factors apply in the first instance with all subsequent instances, what you risk is what Tavron itself warned in footnote seven of that case, which is that attorneys will not volunteer because of fear of being verbally abused, being abused in writing, submitted to the court, and also in having complaints filed against them. And we have an individual here who not only did that with Reed Smith, a very good firm, but also did that in the Eastern District against Drinker. But having those things happen, it happens a lot. I mean, back when I was in law school and we did this type of work, you know, there were three things you would do if you were convicted. You would file an appeal, you'd file for a bail pending appeal, and you would make a claim for ineffective assistance against your counsel. And if it wasn't counsel, you'd add a fourth, you'd ask the counsel to be appointed for you. And so it's understood, and it's also understood that if you're in prison and this is what you're thinking about almost exclusively and you're sometimes wondering why the counsel isn't giving you exclusive time, it's just part of the tension that exists by the way things are set up. So I don't understand why it can't be that you at some point, you take that into account, but if you do reach a point where you can't go on any further with a particular counsel, then the question becomes do you get a second counsel. And Ms. Acara is saying the court should have applied the Taveron factors on this successive motion and really didn't go through the motion of it, is what essentially I understand her argument to be. Well, two points, Your Honor. My first point is this is certainly not in the context of a criminal case where a pro se. I understand it's not criminal. Yes. It has an absolute right to it. Although I will note that even in that context, the courts are clear that that right doesn't extend to choosing your counsel. But here you'll agree that it's essentially three things. Is there arguable merit? Is the person indigent? And is the person reasonably able to represent himself? Is that correct? That's correct, although I would say that there – excuse my question. No, you go ahead. Thank you. Going back to my first issue, I would argue that there wasn't, in fact, arguable merit with regard to Superintendent Klinger. Well, if you survive a – I get it. But if you survive a motion for summary judgment, and a lot of courts use motions for summary judgment to clear the calendar, that didn't happen here. So I have to assume that there's arguable merit. I can't do anything other than – I mean, if you survive a motion for summary judgment, what do you think? Well, normally I would agree with you, Your Honor. I absolutely agree that once you survive a motion for summary judgment, generally there's arguable merit. And I'm not trying to argue elsewise. But in this case, that was clear error. The case law is clear that what is being alleged against the superintendent is not an Eighth Amendment claim as a matter of law. But if we step aside to that, yes, clear – the arguable merit, he cannot afford an attorney. We concede that. This case looks complex. It's going to a trial. So the district judge points counsel has a very difficult time. That counsel, after spending a lot of time, and quite frankly a lot of the pro bono resources, because in this case the judge also – the court paid for the expert as well, I believe, and at one point during the hearing mentioned that this case was consuming ten times the amount of resources that normal pro bono cases consume, made a decision not to appoint subsequent counsel. I would note that if we – the court talks about likely ability to present the case, talks about former counsel conducting an investigation, talks about how difficult it was to find other counsel, even if we assume all the other Tavron factors weigh in favor of Mr. Houser, I still don't believe that's abuse of the broad discretion granted to the court. Thank you very much. Mr. Carr. Your Honors, I have two points coming, but I'll – speak up just a little bit, sorry. Thank you. Your Honors, I have two points on rebuttal, but before I get to those points I'd like to first address Mr. Kirkpatrick's argument that Mr. Houser's claims against Superintendent Foligno have no merit. This court in cases like Spruill and Dermer stated that non-medical prison officials are only shielded from 1983 claims when there is no actual knowledge or no reason to believe that there was improper treatment or failure to treat. Here Mr. Houser at trial discussed many grievances that he filed and asked Mr. Foligno questions pertaining to reason to believe on cross-examination. So because Mr. Houser submitted the grievances during trial and discussed them with Mr. Foligno, this is an issue that's not really appropriate for resolution here, but rather an entity charged with fact-finding should be resolving this issue. First, to address the issue of the withdrawal of counsel, Mr. Houser did not want his counsel to withdraw. Appellees try to paint a picture that's really unsupported by the record. He was asked by Judge Ambrose several times whether he agreed to his counsel's withdrawal. The judge went on to explain that if he agreed, he would be proceeding per se. Mr. Houser's response was... He was kind of evading the question, wasn't he? He was, yes, Your Honor, in an attempt to explain why he was doing what he was doing. He was faced with an ultimatum. And critically, Mr. Houser did not move for new counsel. His counsel moved to withdraw, and I think that distinction is an important one here. Furthermore, with respect to the ability prong, Mr. Houser's ability decreased based on his reliance. He had relied on Reed Smith for many months and was therefore perhaps not super familiar with the developments of the case and the factual discovery that Reed Smith had in their possession. And so for those reasons, we urge this court to reverse and remand because Tebron demonstrates the necessity of counsel in this case. But at the very least, we urge this court to confirm the relevance of Tebron to each and every request for appointment of counsel because that critical mask provides some uniformity across these evaluations. Thank you. Thank you very much for coming back and arguing this case. Thank you for your work in doing it. Commissioners Hedrick and Dixon, thank you. Again, I repeat what I said at the outset. It is a true service, all of you do. And thank you to counsel on the other side as well.